78IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

**Richmond Division**

YOLANDA W. STOKES,

    Plaintiff,

v.                                                                                          Civil Case No. 3:14-cv-536-JAG

STEVEN BENHAM, *et al.*,

    Defendants.

## OPINION

Yolanda Stokes used to be a Commissioner on the Hopewell Redevelopment and Housing Authority, a position to which she was appointed by the Hopewell City Council. The City Council later changed its mind and removed her. Perceiving the removal as an act of retaliation for helping needy people, Stokes filed this law suit. Stokes has changed the identities of the defendants and the bases on which they should be held liable several times. After multiple attempts to revise her allegations, and pursuant to this Court's order, she filed a third amended complaint, which contained three claims. First, she argues the defendants retaliated against her in violation of Title VII, the Americans with Disabilities Act, the Rehabilitation Act, and the Fair Housing Act. Second, she claims the defendants violated her constitutional right to equal protection. Finally, she claims defamation per se.

Stokes' third amended complaint does not state a claim for relief. Specifically, because the City Council appointed her to a position on the policy-making level, she does not enjoy the protections of Title VII. With respect to her other ADA, Rehabilitation Act, and FHA retaliation claims, she fails to put forward facts that show a causal connection between her protected

activities under those laws and the defendants' decision to remove her from the Housing Authority. Her claim for relief under § 1983 fails for two reasons. First, she fails to allege a policy, practice, or custom of discrimination, which is necessary to state a § 1983 claim against a municipality. Second, the complaint lacks any facts that raise the specter of discrimination on any basis. Finally, the defamation claim fails both because it does not comply with the Court's instructions for filing the third amended complaint and because it lacks any factual support.

Accordingly, the Court grants the defendants' motions to dismiss in their entirety and dismisses the third amended complaint.

## I. FACTS

The Hopewell City Council appointed Yolanda Stokes as a Commissioner to the Hopewell Redevelopment and Housing Authority ("HRHA" or "Authority") in November 2012. Just eight months later, on July 8, 2013, the City Council convened a meeting and removed Stokes from the Authority. Stokes saw this as payback for her attempts to protect the rights of herself and others. In the third amended complaint ("TAC"), she emphasizes three separate incidents prior to her appointment that motivated the City Council to remove her.

The first incident relates to Stokes' unsuccessful applications for several positions with the Authority in 2009, including Executive Director, Housing Manager, and Secretary-Receptionist. Stokes felt especially qualified for each position, believed her status as a resident in the Authority's public housing entitled her to preferential treatment, and even had the recommendation of Joyce Gholson, then an Authority employee. Nonetheless, the Authority did not interview Stokes. In response, Stokes filed a complaint with the Equal Employment Opportunity Commission alleging retaliation, age discrimination, and disability discrimination.

On December 31, 2012, Stokes received a letter indicating that the EEOC had dismissed her charge and issued her a right to sue letter.

The second incident arose when Stokes helped her late mother Gloria Jean Glover file a complaint with the Department of Housing and Urban Development ("HUD") under the Fair Housing Act ("FHA"). As the Court understands Stokes' explanation, Ms. Glover requested permission from the Authority for, among other accommodations, a live-in aide for health reasons, and Stokes intended to assume that role. The Authority denied this request, so Glover, with Stokes' help, filed the complaint with the FHA. The exact dates of this episode remain fuzzy, but attachments to the TAC indicate that Ms. Glover filed her complaint with HUD in 2011, and HUD found the Authority partially in compliance and partially in non-compliance in September 2012.[1]

Finally, Stokes also tried to assist Joyce Gholson, her contact within the Authority who had recommended her in 2009, after the Authority terminated Gholson. Stokes helped Gholson file an EEOC claim alleging that her termination was discriminatory.[2]

Believing her removal from the Authority to be retaliation for her attempts at good deeds, Stokes filed her own EEOC charges. On September 30, 2013, she named various individuals in separate EEOC charges, including the Mayor and Vice-Mayor of Hopewell, two members of the City Council, and six other HRHA commissioners. On October 29, 2013, she filed another EEOC charge, this time jointly against the City Council and the Housing Authority. In all of these charges, Stokes alleged that she was removed as commissioner in retaliation for having

---

[1] The finding of non-compliance related to Glover's request for a handicapped parking sign. In all other respects, including the request for a live-in aid, the Authority was found to be in compliance with the applicable laws. (*See* Dk. No. 29, Exh. 51.)

[2] Gholson later filed her own lawsuit in this Court. *Gholson v. Benham*, Case No. 3:14-cv-622 (E.D. Va. filed Sept. 8, 2014). Gholson's complaint has no relation to Stokes' claims, although the Court notes the striking similarity in tone, wording, and formatting between their filings.

filed her previous Title VII complaint. On April 30, 2014, and July 31, 2014, the EEOC issue right to sue letters to Stokes for her claims against the individuals and the entities, respectively.

Stokes filed her suit *in forma pauperis* on July 28, 2014. Initially she named as defendants 11 individuals, but neither the City Council nor the HRHA. (Dk. No. 3.) The individual defendants, divided into groups based on their affiliations to the City Council or the Authority, filed motions to dismiss. Stokes responded in opposition to those motions, but also sought leave to file an amended complaint.[3] (Dk. No. 11.) Before the Court could rule on the defendants' motions to dismiss, Stokes filed a second motion for leave to file an amended complaint. (Dk. No. 21.) The second amended complaint named as defendants both the City Council and the Authority, but no individual defendants.

Recognizing that Stokes intended to name both individual and entity defendants in her suit, the Court ordered her to file a third amended complaint and gave explicit instructions for how to do so. (*See* Dk. No. 27.) On February 3, 2015, Stokes filed the TAC. (Dk. No. 29.)

As anticipated, Stokes names both the City Council and Authority as defendants, along with many individuals from both entities. Specifically, she names Mayor Michael Bujakowski, Vice Mayor Jasmine Gore, and City Council Members Christina Lumina-Bailey, Roosevelt Edwards, Wayne Walton, and Jackie Shornak (collectively, the "individual City Council defendants"). She also names HRHA Executive Director Steven Benham; Commissioners Linwood Crenshaw, Michael Mahaney, Sheila Flowers, Renee Broxie, and Johnny Jones; James Vergara, whom Stokes identifies as the Authority's "Staff Attorney"; and Tina Raatz and Greg Pe'ay, two Housing Managers who work for the Authority (collectively, the "individual Authority defendants").

---

[3] The Court notes that Stokes attached approximately 140 pages of exhibits to her response, but did not include the proposed amended complaint. (*See* Dk. No. 11.)

Stokes alleges three claims against different groupings of the defendants. Count I alleges retaliation in violation of Title VII, the Fair Housing Act, the Americans with Disabilities Act, and the Rehabilitation Act. Count II alleges an equal protection violation brought pursuant to 42 U.S.C. § 1983. Count III alleges defamation per se.

The defendants, again grouped by their affiliations to the City Council and the Authority, filed several motions to dismiss. The City Council and the individual City Council defendants ask the Court to dismiss the TAC for failing to state a claim for relief. The Authority and the individual Authority defendants ask the Court to dismiss the TAC for the same reason, and also because of Stokes' failure to comply with this Court's instructions for filing the TAC.

## DISCUSSION

### A. Legislative Immunity

The City Council and individual City Council defendants raise legislative immunity as a defense against Stokes' law suit. "Legislative immunity protects those engaged in legislative functions against the pressures of litigation and the liability that may result." *McCray v. Md. Dep't of Transp., Md. Transit Admin.*, 741 F.3d 480, 484 (4th Cir. 2014). Legislative immunity does not automatically attach whenever a defendant claims the title of "legislator," but rather when the action taken qualifies as "legislative." *Id.* at 485. Legislative actions tend to be prospective, reflect broader policies that affect the electorate, and "generally bear the outward marks of public decisionmaking, including the observance of formal legislative procedures." *E.E.O.C. v. Washington Suburban Sanitary Comm'n*, 631 F.3d 174, 184 (4th Cir. 2011). By contrast, decisions involving employment or personnel do not receive the protection of legislative immunity "because they most often affect specific individuals rather than formulate broad public policy." *Id.*

5

Although the City Council held a vote to decide whether to remove Stokes from the HRHA, that action was not legislative because it was "plainly unrelated to the process of adopting prospective, legislative-type rules." *Roberson v. Mullins*, 29 F.3d 132, 135 (4th Cir. 1994) (internal quotations, citations, and alterations omitted). Accordingly, the Court concludes that neither the City Council nor individual City Council defendants are entitled to legislative immunity from Stokes' claims.

## B. Rule 41(b) Dismissal

Despite this lack of immunity, the Court can dispense with many of the defendants and some portions of the claims by addressing the Authority's motion to dismiss under Rule 41(b). (Dk. No. 39.) Under Federal Rule of Civil Procedure 41(b), a court may order the involuntary dismissal of a case when the "plaintiff fails . . . to comply with [the federal] rules or a court order." Fed. R. Civ. P. 41(b). "The Court may dismiss a complaint under Rule 41(b) in its discretion." *T.W. v. Hanover Cnty. Pub. Schools*, 900 F. Supp. 2d 659, 667 (E.D. Va. 2012) (citing *Simpson v. Welch*, 900 F.3d 33, 35 (4th Cir. 1990)).

As noted above, when the Court ordered Stokes to file the TAC, it included several specific instructions for how to do so. (*See* Dk. No. 26.) Specifically, the Court explained

> [t]he first paragraph of the third amended complaint must contain a list of defendants. Thereafter, in the body of the third amended complaint, plaintiff must set forth legibly, in separately numbered paragraphs, a short statement of the facts giving rise to the plaintiff's claims for relief. Thereafter, in separately captioned sections, plaintiff must clearly identify each legal claim and the basis under federal or state law for that claim. Under each section, the plaintiff must list each defendant liable under that legal theory and explain why she believes each defendant is liable to the plaintiff. Such explanation should reference the specific numbered factual paragraphs in the body of the third amended complaint that support that assertion. Plaintiff shall also include a prayer for relief.

(*Id.*) The Court warned Stokes that "[f]ailure to comply strictly with the requirements set forth above will result in dismissal of the action without prejudice." (*Id.* (citing Fed. R. Civ. P. 41(b)).

6

Comparison of the order's requirements with the TAC reveals several discrepancies. First, Stokes names as defendants ten individuals who are not listed in any of the claims: City Council Members Lumina-Bailey, Edwards, Walton, and Shornak; HRHA Executive Director Steven Benham; and HRHA Commissioners Crenshaw, Mahaney, Flowers, Broxie, and Jones. The Court will not presume to pick and choose where each of these defendants ought to be named. Moreover, Stokes received the explicit instruction to name each defendant to be held liable under each count. Her failure to do so gives the Court a basis under Rule 41(b) to dismiss Lumina Bailey, Edwards, Walton, Shornak, Benham, Crenshaw, Mahaney, Flowers, Broxie, and Jones from the suit, which the Court does now.

Second, Stokes lists someone named David Fratacangelo as a defendant under Count II, but does not name him as a defendant in the caption of the TAC. As a result, Fratacangelo is not included in the case's docket information, and he was never served with the complaint. Based on Stokes' failure to comply with the Court's order to name all defendants in the first paragraph of the TAC, the Court dismisses her claim against Fratacangelo pursuant to Rule 41(b).[4]

Finally, Count III, labeled "Defamation of Character per se," lists no defendants and provides no factual claims. It simply states, "Defamation of Character per se," and nothing else. As a result, neither the defendants nor the Court know which defendants are to be held liable under Count III. Moreover, Stokes has not provided any factual explanation for the defamation claim under Count III. This failure to comply with the Court's order leads the Court to dismiss Count III from the complaint under Rule 41(b).[5]

---

[4] Even if Stokes had named Fratacangelo at the start of the TAC, the Court would still dismiss her claims against him because, other than saying his name, the TAC is bereft of any mention of him. As such, she fails to state a claim against Fratacangelo under Rule 12(b)(6).

[5] Among the 130 pages of attachments to the TAC are several printed documents, including a personal e-mail, a docket sheet from the Hopewell General District Court, and online news

With these preliminary issues out of the way, the TAC alleges two claims. Count I, alleged against the City Council and the Authority, claims retaliation in violation of Title VII, the ADA, the FHA, and the Rehabilitation Act. Count II, alleged against the City Council, the Authority, Tina Raatz, Greg Pe'ay, James Vergara, Michael Bujakowski, and Jasmine Gore, claims a violation of Stokes' equal protection rights. The Court addresses these claims in turn.

### C. Retaliation Claims (Count I)

Stokes first alleges that her removal from the Authority constituted retaliation for her attempts to oppose discrimination and protect both her own and others' rights. She claims that the Authority and the City Council violated the anti-retaliation provisions of Title VII, the ADA, the Rehabilitation Act, and the FHA.

### 1. Title VII Does Not Cover Virginia Housing Authority Commissioners

Title VII of the Civil Rights Act of 1964 protects employees from discrimination on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). It also prohibits an employer for retaliating against an individual because he or she "opposed any practice made unlawful by Title VII or made a charge, testified, assisted, or participated in a Title VII proceeding or investigation." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 56 (2006) (internal quotation marks and citations omitted). This anti-retaliation protection extends to "employees or applicants for employment." 42 U.S.C. § 2000e-3(a). Accordingly, whether

---

articles about Stokes' removal from the HRHA, on which Stokes appears to have handwritten "Defamation of Character" or "Defamation." (*See* Dk. No. 29, Exhs. 45, 46, 48, 49, 50.) These documents cannot be considered under a Rule 12(b)(6) motion, which focuses solely on the complaint. *See Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). Nonetheless, the Court notes that the attachments indicate neither which statements are defamatory nor which defendants should be held liable, and thus provide no support for Stokes' defamation claim.

Stokes receives the protection of Title VII here depends on whether she is considered an "employee" under that law.[6]

### b. Title VII Excludes "Appointees on the Policy Making Level"

Title VII defines "employee" as

> an individual employed by an employer, except that the term 'employee' shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or *an appointee on the policy making level.*

42 U.S.C. § 2000e(f) (emphasis added). The exact parameters of the policy-making level exception remain unclear, but several courts have outlined relevant factors to consider.

In *Gregory v. Ashcroft*, 501 U.S. 452 (1991), the Supreme Court considered the policy-making exception under the ADEA and its application to Missouri state court judges. Although the Court did not elaborate on the definition of "appointee on the policy making level," it did point out that "[t]he statute refers to appointees 'on the policymaking level,' not to appointees 'who make policy.'" *Id.* at 466. Accordingly, "[i]t may be sufficient that the appointee is in a position requiring the exercise of discretion concerning issues of public importance." *Id.*

When it comes to identifying *who* qualifies as an "appointee on the policy-making level," most courts focus on "whether the position held by the individual authorizes, either directly or indirectly, meaningful input into governmental decision-making on issues where there is room for principled disagreement on goals or on their implementation." *Americanos v. Carter*, 74 F.3d

---

[6] Although she raises the argument that her status as a former applicant for a job makes her a proper plaintiff under Title VII, the facts from the TAC show that Stokes' removal from the Authority bore no relation to her denied 2009 job applications. Accordingly, she must show that she was retaliated against as an employee. *See Brower v. Runyon*, 178 F.3d 1002, 1007 (8th Cir. 1999) (explaining that applicant status must be sufficiently related to the plaintiff's Title VII claim); *Suri v. Foxx*, 2014 WL 7336700, at *6 (D.N.J. Dec. 19, 2014) ("Retaliation claims may be brought by applicants for employment, if the retaliatory conduct is related to the employment application; for any other retaliation conduct, however, the plaintiff must be an employee." (citing *Knitter v. Corvias Military Living, LLC*, 758 F.3d 1214 (10th Cir. 2014))).

9

138, 141 (7th Cir. 1995). This "meaningful input" usually materializes in the individual's exercise of discretionary power, often in ways that control employees or bind the ultimate policy-making body. *See Conley v. City of Erie*, 521 F. Supp. 2d 448, 455 (E.D. Pa. 2007) (discussing factors including the exercise of discretionary power, "rather than solely administrative powers," the power "to act and speak on behalf of the policymaker," and the ability to "control other employees"). Courts have also emphasized the need for the individual to be "appointed *by an elected official* to a policy making position." *Crumpacker v. Kansas Dep't of Human Resources*, 474 F.3d 747, 752 (10th Cir. 2007) (quoting *Anderson v. Albequerque*, 690 F.2d 796, 800 (10th Cir. 1982)); *see also Conley*, 521 F. Supp. at 455 (noting the requirement to serve "at the pleasure of the appointing authority").[7]

### c. Virginia Housing Authority Commissioners Fit Within the Exception

With respect to Stokes' position as a housing authority commissioner, Virginia law outlines the structure and powers relevant to the policy-making exception. Localities retain the power to create a housing authority, which shall be considered "a political subdivision of the Commonwealth," Va. Code § 36-4, in order to "promote the availability of affordable housing for all citizens of the Commonwealth and in particular to provide safe, decent, and sanitary housing for those citizens with moderate incomes," *id.* § 36-2. To that end, Virginia law vests a number of discretionary powers in each housing authority, including the power to sue and be sued, operate housing projects, enter into contracts, leases, and rental agreements, invest funds, conduct investigations, make loans, and act on behalf of the local or state government to make construction or rehabilitation loans. *See id.* § 36-19. A housing authority also has the power to

---

[7] Despite the requirement that an elected official appoint the plaintiff, the appointee need not "have a close working relationship with the elected official who appointed them." *Spann-Wilder v. City of North Charleston*, 2010 WL 3222235, at *6 (D.S.C. Aug. 13, 2010).

hire staff, including an executive director, and set individuals' "qualifications, duties and compensation." *Id.* § 36-13. The exercise of all of these powers rests in the hands of commissioners, *id.* § 36-12, who are to be appointed by "the local governing body of the city or county," *id.* § 36-11, and can be removed by the same, *id.* § 36-17.

Stokes had significant discretionary powers in an area of important governmental decision making—the development and availability of affordable housing—after having been appointed by the elected members of the Hopewell City Council. While in this position, she had the power to speak and act on behalf of the local government in certain areas. This occurred against the backdrop of the City Council's power to remove her. Utilizing the factors explained above, Stokes clearly fell within the policy-level appointee exception, and therefore cannot sue under Title VII for claims deriving from her time as an HRHA Commissioner. Accordingly, the Court grants the motion to dismiss with respect to the Title VII retaliation component of Count I.

## 2. Stokes Fails to State Claims for Retaliation under the ADA and Rehabilitation Act

Stokes alleges that the Authority and City Council removed her in retaliation for her previous EEOC charge, which alleged disability discrimination in violation of the ADA. According to her, this violated the antiretaliation provisions of the ADA and Rehabilitation Act. To state a claim for ADA or Rehabilitation Act retaliation, a plaintiff "must allege (1) that [she] engaged in protected conduct; (2) suffered an adverse action; and (3) that a causal link exists between the protected conduct and the adverse action." *A Society Without a Name v. Virginia*, 655 F.3d 342, 350 (4th Cir. 2011); *see Hooven-Lewis v. Caldera*, 249 F.3d 259, 272 (4th Cir. 2001) (outlining the same standard for retaliation claims under the Rehabilitation Act). Although Stokes adequately alleges she engaged in protected conduct by filing the initial 2011 EEOC

charge, and the Court will assume that her removal from the HRHA constituted an adverse action, she does not sufficiently plead the causal connection between the two.

In an employment discrimination case, the plaintiff "must plead that his or her protected activity constituted the 'but-for' cause of the materially adverse employment action by the employer." *Jones v. HCA*, 16 F. Supp. 3d 622, 633 (E.D. Va. 2014) (citing *Univ. Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013)). Plaintiffs usually clear this bar easily when the protected activity and the adverse action are close together in time. *Id.* But, "a lengthy time lapse between the employer becoming aware of the protected activity and the alleged adverse employment action . . . negates any inference that a causal connection exists between the two." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998); *see, e.g., Causey v. Balog*, 162 F.3d 795, 803 (4th Cir. 1998) (finding an intervening time of thirteen months "too long to establish causation absent other evidence of retaliation").

Here, Stokes filed her first EEOC charge in January 2011. The City Council removed her from the HRHA on July 8, 2013. With the two-year gap between these events, she cannot rely on temporal proximity for the causal connection between her 2011 EEOC charge and her 2013 removal. Instead, she must point to specific facts that show the City Council made its decision to remove her based on her 2011 EEOC charge. The TAC lacks those facts.

In fact, Stokes undermines her retaliation claims by explaining that Steven Benham reached out to each defendant to explain the extent of Stokes' prior claims against the HRHA *before* they appointed her to the position. Moreover, Stokes further clouds the causation element by bringing up Benham's statement that she owed more than $5000 in rent to the Authority. She disputes that she owed any legal obligation to pay rent to the Authority, but she does not dispute that this allegation was made to the City Council when they decided to remove her.

Accordingly, the Court cannot reasonably infer that her 2011 EEOC charge was the "but for" cause of her termination. Stokes has not pled any other facts that show her removal served as retaliation for her EEOC complaint. Accordingly, she fails to state a claim for retaliation under the ADA and Rehabilitation Act.

### 3. Stokes Fails to State a Claim for Retaliation under the FHA

Stokes next alleges that the City Council retaliated against her because she helped her mother file a complaint with HUD. The Fair Housing Act prohibits retaliation under 42 U.S.C. § 3617, which states that "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any person . . . on account of [her] having aided or encouraged any other person in the exercise or enjoyment of any right granted or protected by" certain sections of the Fair Housing Act. This provision "protects persons who aid or encourage others in securing rights to equal housing opportunities and conditions by making it unlawful to coerce, intimidate, threaten or interfere with them because of their aid or encouragement." *People Helpers, Inc. v. City of Richmond*, 789 F. Supp. 725, 731 (E.D. Va. 1992) (quoting *Meadows v. Edgewood Mgmt. Corp.*, 432 F. Supp. 334, 335 (W.D. Va. 1977)). To state a claim for retaliation, the complaint must sufficiently allege "(1) the plaintiff was engaged in protected activity; (2) the defendant was aware of that activity; (3) the defendant took adverse action against the plaintiff; and (4) a causal connection exists between the protected activity and the adverse action." *Hall v. Greystar Mgmt. Serv., L.P.*, 28 F. Supp. 3d 490, 495 (D. Md. 2014).

For the same reasons discussed with her ADA and Rehabilitation Act retaliation claims, even assuming Stokes meets the protected activity and adverse action requirements, she has not shown a plausible causal connection between the two. The TAC specifically states that Steven Benham told the defendants about Stokes' involvement with her mother's FHA complaint before

they appointed her as a commissioner. By Stokes' own facts, this protected act did not keep her from being appointed, and the complaint does not explain how it led to her removal. Accordingly, she fails to state a claim for retaliation under the Fair Housing Act.

### D. § 1983 Equal Protection Claims (Count II)

In Count II, Stokes brings a claim under § 1983 for the violation of her equal protection rights under the Fifth and Fourteenth Amendments.[8] She asserts this claim against the City Council and HRHA, as well as Tina Raatz, Greg Pe'ay, James Vergara, Michael Bujakowski, and Jasmine Gore, each in their official and individual capacities.[9] Stokes says that these defendants violated her equal protection rights by discriminating against her on the basis of race, gender, and disability.

Section 1983 provides a cause of action against state actors for civil rights violations. *See, e.g., Monroe v. Pape*, 365 U.S. 167, 172 (1961). To state a claim under § 1983, a plaintiff must allege that a person acting under color of state law deprived her of a "right, privilege or immunity secured by the Constitution or laws of the United States." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998).

#### 1. Limitation on Municipal Liability

Both local governments and their subdivisions are considered "persons" for purposes of § 1983 liability. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). Additionally, suits filed against local government officials in their official capacities are to be treated as suits against the entity for which the individual works. *See Kentucky v. Graham*, 473 U.S. 159, 165-

---

[8] The Fifth Amendment applies only to federal actions, not state actions. *See Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 213-14 (1995). None of Stokes' allegations name any federal actors, so the Court dismisses her Fifth Amendment claims.

[9] As noted above, Stokes names David Fratacangelo in the caption to Count II, but the Court dismisses all claims against Fratacangelo, pursuant to Rule 41.

66 (1985). Accordingly, the Court construes each of the official-capacity claims against the individual defendants as claims against either the City Council or HRHA.

In order to hold a municipal entity liable under § 1983, the plaintiff must establish that the violation of her rights was the result of an official policy or custom. *See Monell*, 436 U.S. at 694; *Spell v. McDaniel*, 824 F.2d 1380, 1385 (4th Cir. 1987). The TAC puts forward no facts about the policies, customs, practices, or decisionmaking protocols of either the City Council or HRHA. Instead, Stokes simply makes the conclusory allegation that her allegations show "the pattern, practice, custom and usage" of the defendants. The Court cannot accept these conclusions without any facts to back them up. Without the requisite facts, the Court finds that Stokes fails to make out a claim for municipal liability under § 1983. Accordingly, the Court grants the motion to dismiss Count II as against the City Council, the HRHA, and the official-capacity claims brought against the remaining individual defendants.

### 2. Stokes Fails to State a Claim Under § 1983

With the City Council, HRHA, and official-capacity claims dismissed, all that remains are Stokes' individual-capacity claims against Tina Raatz, Greg Pe'ay, James Vergara, Michael Bujakowski, and Jasmine Gore. To state a claim for discrimination under § 1983, the plaintiff must allege three elements: "(1) the defendant acted under color of state law; (2) by those actions, the defendant intentionally deprived the plaintiff of a right protected under the Constitution or laws of the United States; and (3) the defendant's actions were the proximate cause of the deprivation." *Mveng-Whitted v. Va. State Univ.*, Case No. 3:11-cv-842, 2012 WL 3686285, at *7 (E.D. Va. Aug. 24, 2012).

Stokes alleges that the defendants singled her out "for adverse treatment based on her gender, race, and handicap and acted with discriminatory purpose to discriminate against [her]

15

on the basis of gender, race and handicap/disability," but the TAC lacks any factual basis for those claims. Nowhere in the TAC does Stokes provide any facts that allow the Court to make the slightest inference that anyone discriminated against her on the basis of her gender, race, or disability.[10] Without factual support, Stokes fails to state a claim for discrimination pursuant to § 1983. Accordingly, the Court grants the defendants' motion to dismiss Count II.

### 3. Stokes' Claims on Behalf of Her Deceased Family Member Fail

In Count II, Stokes alleges that the defendants "singled out Plaintiff and Plaintiff's family member (the late Gloria J. Glover) for adverse treatment." To the extent Stokes seeks to bring suit on behalf of her late mother, the Court dismisses those claims. "Historically, the common law rule for survivability was that a cause of action died with the person." *Brown v. Town of Cary*, 706 F.3d 294, 299 (4th Cir. 2013). Because § 1983 does not provide for survival of claims, the Court must look to Virginia law to decide whether the claim survives. *See id.* Generally, Virginia allows claims to "survive either the death of the person against whom the cause of action is or may be asserted, or the death of the person in whose favor the cause of action existed, or the death of both such persons." Va. Code § 8.01-25.

Rule 17(a) of the Federal Rules of Civil Procedure requires that any action filed in federal court "be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a). Certain individuals "may sue in their own names without joining the person for whose benefit the action is brought," including the executor or administrator of an estate. *Id.* Stokes has filed the third amended complaint only on her own behalf, because she names no other plaintiffs in the case caption. Additionally, she does not identify herself as either the executrix or administrator of her mother's estate. Accordingly, Gloria Glover is not a proper party to this suit.

---

[10] For instance, nowhere in the third amended complaint does Stokes state her race or disability.

Even if the Court were to assume that Stokes properly presented herself as the party to sue on behalf of her mother's estate, the third amended complaint lacks sufficient facts to make out any constitutional violation of Ms. Glover's rights. The TAC explains Ms. Glover's equal-protection claims with the same particularity it explains Stokes' claims, which is to say, without any sufficient factual basis. Accordingly, the complaint fails to state a claim for relief on behalf of Ms. Glover, and the Court dismisses those claims.

### III. CONCLUSION

Despite multiple opportunities to present her claims, Ms. Stokes has not cobbled together the right facts or law to warrant relief from the Court. For the reasons discussed above, the Court will grant the defendants' motions to dismiss in their entirety. The Court hereby dismisses the third amended complaint.

The Court will enter an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record and the *pro se* plaintiff.

Date: July 9, 2015
Richmond, Virginia

/s/
John A. Gibney, Jr.
United States District Judge